

EXHIBIT A

AlaFile E-Notice

71-DR-2023-900199.00
Judge: HENRY T. REAGAN II

To: HOWELL CARMEN FRANCIS
carmen@carmenhowell.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF COFFEE COUNTY, ALABAMA

WASMIAH ALDURAIBI V. JOHN RAYMOND BOWER
71-DR-2023-900199.00

The following matter was FILED on 11/19/2025 1:53:54 PM

Notice Date:    11/19/2025 1:53:54 PM

AMY L. REEVES
CIRCUIT COURT CLERK
COFFEE COUNTY, ALABAMA
101 SOUTH EDWARDS STREET
ENTERPRISE, AL, 36330

334-347-2519

ELECTRONICALLY FILED
11/19/2025 1:53 PM
71-DR-2023-900199.00
CIRCUIT COURT OF
COFFEE COUNTY, ALABAMA
AMY L. REEVES, CLERK

IN THE CIRCUIT COURT OF COFFEE COUNTY, ALABAMA
ENTERPRISE DIVISION

| | |
|---|---|
| ALDURAIBI WASMIAH,<br>Plaintiff, | )<br>)<br>) |
| V. | ) Case No.:  DR-2023-900199.00<br>) |
| BOWER JOHN RAYMOND,<br>Defendant. | )<br>)<br>) |

## FINAL JUDGMENT OF DIVORCE

This matter came before the court on the complaint for divorce filed by the plaintiff/wife/mother, Alduraibi Wasmiah, against the defendant/husband/father, John Raymond Bower. The court conducted a bench trial where it received testimony and evidence, ore tenus.

### History of the Marriage & Litigation

The parties were married on November 7, 2014. The husband was previously married and has adult children. The wife is a natural born citizen of Saudi Arabia and maintains a dual citizenship in the United States of America. The parties have a child, A.H.B, a son, born August 2, 2015. The husband is age 71 years and the wife is age 41 years. The parties have lived in Coffee County, Alabama for the entire duration of their 11-year marriage.

The wife filed a complaint for divorce and request for pendente lite order on November 30, 2023. The husband filed an answer and counterclaim. In his verified counterclaim, the husband requests a court order preventing the wife from relocating the minor child to Saudi Arabia.

On December 7, 2023, the court entered a status quo order directing the parties to maintain payment of all bills and to preserve marital assets. The court determined the wife was the primary caregiver to the minor child and ordered that neither party shall remove the minor child from the jurisdiction of the court nor conceal the child from the other parent. After several months of discovery, the parties were ordered to mediation. The mediator reported the parties were unable to resolve the case on November 5, 2024.

On November 25, 2024, the court granted the wife's motion to compel discovery and awarded the wife $1,000 in reasonable attorney fees. Counsel for the husband withdrew and the husband began representing himself, pro se. The husband was granted a 14-day extension to comply with outstanding discovery requests related to the husband's mental health treatment and medical records. The husband failed to comply. Filings indicated the parties remained living together and their ability to cohabitate and co-parent were rapidly deteriorating. Based on averments in the husband's pro se filings, the court found the husband was suffering from mental health conditions and physical limitations that prevented him from providing for the child's

basic needs and exercising sound judgment.

On December 16, 2024, the court entered a pendente lite order granting the wife temporary custody of the minor child and temporary possession of the marital home. The husband filed several motions, an appeal, and a writ of mandamus objecting to the trial court's order compelling him to respond to the wife's request for discovery and objections to the pendente lite order. The Alabama Court of Civil Appeals denied the husband's request to stay the proceedings on December 20, 2024.

On December 31, 2024, counsel for the wife filed a motion for contempt alleging the husband had repeatedly refused to comply with discovery, resulting in substantial attorney fees and litigation costs.

On January 3, 2025, the court scheduled an evidentiary hearing on the wife's request for contempt proceedings. In the interest of fairness and justice, the court appointed counsel to represent the husband during the proceedings at no cost to the husband. The appointment of counsel was necessary because contempt proceedings could result in confinement at the county jail. Before an evidentiary hearing could be conducted, the husband filed a pro se writ of mandamus to the Court of Civil Appeals.

On January 10, 2025, the Court issued an amended pendente lite order that set forth a supervised father/son visitation schedule and video chat schedule. The father was permitted access to the marital home for the supervised visits.

On January 27, 2025, newly retained counsel for the husband requested the contempt proceedings be continued and requested additional time to comply with outstanding discovery. The husband dismissed his appeal and writ of mandamus cases pending in the Court of Civil Appeals. The court granted the requests and ordered counsel to settlement discussions.

On February 5, 2025, the court ordered the parties to settlement discussions and/or mediation. On March 26, 2025, counsel filed a joint notice that discovery issues had been resolved.

On June 2, 2025, counsel for both parties jointly motioned for the wife and minor child to travel to Saudi Arabia to visit wife's family. The court approved the request and allowed the husband access to the marital home while the wife and child spent the summer in Saudi Arabia.

On August 28, 2025, the husband motioned the court to appoint a guardian ad litem for the minor child. The court granted the request and continued the final hearing to allow the guardian ad litem sufficient time to meet with the parties and review the case file.

## Evidence and Findings

The court received ore tenus evidence during the final hearing on November 6, 2025. The parties were each present and represented by counsel. The court appointed guardian ad litem was also present for the proceedings.

During testimony, the court assessed witness credibility based on demeanor, motive, corroborating evidence, and other factors. The court believes it is necessary to describe the level of tension during the proceedings because the trial transcript will likely reflect the argumentative, discourteous and disruptive conduct that permeated the proceedings.

The court struggled to maintain order due to disruptive behavior. Counsel for defendant husband was unnecessarily confrontational, argumentative, and demeaning to opposing counsel. The court took unscheduled breaks and gave verbal instructions to deescalate the high level of emotion and obstinate behavior throughout the hearing. Despite those efforts, several verbal orders were ignored by defense counsel to step away from opposing counsel and return to her assigned table. In its analysis of these proceedings, the court endeavored to separate the unnecessary tension created by defense counsel from tension created by witness behavior. While defense counsel's discourteous behavior and lack of decorum was not a factor in establishing the findings herein, it is important to understand the dynamics when reviewing the transcript of the proceedings.

Defense counsel began the proceedings with a verbal notice that the husband would be appealing the court's final order. Defense counsel then objected to any testimony or evidence regarding the wife's intent to relocate with the child to Saudi Arabia. The court overruled the objection because the record contained evidence of the husband being placed on notice of the wife's relocation plans. In his verified counterclaim (Document 15) dated January 26, 2024, the husband averred that the wife had expressed her intention to relocate the child to Saudi Arabia. Further, counsel had previously reported during a status conference that the wife's desire to relocate was an obstacle preventing settlement.

Minor child testimony

The minor child testified first. The court received his testimony without either parent being present. Counsel for the husband, counsel for the wife, and the guardian ad litem participated in questioning the child. The court found the child to be nervous but truthful. The child described his day-to-day routine, school interests, and hobbies. The child expressed his love for both parents. But his testimony clearly established that he relied on his mother to meet his emotional and physical needs. The child described several trips he made to Saudi Arabia with his mother to visit his many cousins, aunts, and uncles. The child expressed his preference to live with his mother in Saudi Arabia and to visit his father.

The child is not involved in extracurricular activities or sports. He did not mention playing with neighborhood friends or spending time with local family. He was not involved in any church, mosque, or community activities other than attending public school. The child spoke fondly of his father but indicated that his father slept during the day and was not awake when the child was active around the house. The child also complained of a bug infestation in the home.

The child showed some apprehension about moving but explained that his father had told him many bad things about Saudi Arabia. He described not wanting to hurt his father's feelings, but he felt stuck in the middle of the divorce. The father made the child nervous by telling him his mother would kidnap him and take him away. The child spoke positively about his previous visits to Saudi Arabia.

Wife testimony

The court next heard testimony from the plaintiff wife Alduraibi Wasmiah. The wife holds a dual citizenship in Saudi Arabia and the U.S.A. While fluent in the English

language, the wife appeared to have trouble understanding some questions from counsel. The court overruled defense counsel's objection and allowed leading questions, pursuant to Ala. Code § 12-21-138, due to communication difficulties.

The wife described how she first met the husband while he was working in Saudi Arabia. She testified the husband had converted to the Muslim faith before the two met. After knowing each other for two years, the wife agreed to marry the husband and relocate to Coffee County, Alabama. She gave birth to their son after moving to the U.S.A. The parties are both members of the Islamic faith and agreed to raise the minor child as a Muslim.

The wife has lived in Enterprise, Alabama for 11 years but is not happy with her life here. She attended college and was awarded an associates degree from Enterprise Community College but does not work at the request of the husband. She is completely reliant on her husband for financial resources. Her family sent her money to hire counsel in this matter. She has no family or friends in the local area. She has been kept in the dark by the husband about many things. The wife claimed the husband did not tell her about some of his adult children for years. The husband has never shared any financial information with her regarding his income, bank accounts, or investment accounts. The parties own a marital home located at 136 Laurel Breeze Drive, Enterprise, Alabama. The home needs extensive repairs and is infested with bugs. Exhibits show the home has an appraised tax value of $366,000. The wife claimed the home needed extensive repairs and was infested with bugs.

In recent years, the wife claimed the husband has repeatedly threatened to have her deported, despite her being a U.S. Citizen. The husband shows no interest in her or in her interests. After the husband suffered a heart attack, his behavior has gotten worse. He saved pornographic images of woman in computer files and the child has inadvertently viewed the materials. The husband discussed the female anatomy of women with the child when he was 8 years old and described the female menstrual cycle to the child.

The wife claimed the husband is aggressive, manipulative, and volatile. On one occasion, the husband became impatient while waiting to see a doctor in the hospital emergency room and called 911 seeking assistance from law enforcement. The husband called 911 on another occasion because his hamburger did not have cheese after he placed an order at a local fast-food restaurant. The events alarmed the wife and caused her to believe the husband struggles with anger.

The mother takes the child to school and to all doctor appointments and provides for his basic needs. The father does not attend the child's doctor appointments or transport him to school. The child has a close bond with his mother and spends most of his time with her.

The child accompanied the mother to Saudi Arabia during several summer trips. The mother is originally from Riyadh, Saudi Arabia and most of her family live in the city. She and the child stay with family in a two-story apartment during the visits each summer. Exhibits depicted photographs of the child socializing with his cousins at parties and family gatherings. Despite the significant time zone difference, the child maintained telephonic contact with his father during each visit to Saudi Arabia.

The wife intends to relocate the child to Riyadh, Saudi Arabia, if allowed by the

court. She intends to live with her family in the same two-story apartment that she and the child have stayed during previous trips. She explained that it is common for Saudi Arabian families to live with extended family. The child speaks English but expressed his desire to learn more Arabic language. The mother stated that she intends to enroll the child into an international school that teaches students in the English language. Her intent is to allow the child to visit his father in the U.S.A. during the summers. She further testified that she desired the father to visit with the child during school breaks that will coincide with American schools.

The wife denied she has ever threatened to kidnap or withhold the child from the father. She and the husband have discussed the husband obtaining employment and returning to Saudi Arabia. If the husband relocated to Saudi Arabia, the wife agreed to adjust the father/child visitation schedule to allow the father more time with the child. When questioned by the court about the possibility of not allowing the child to leave Saudi Arabia, the wife unequivocally stated that she would never withhold the child from visiting the father in the U.S.A. She stated that she had recently taken the child to Saudi Arabia with permission of the court while this matter was pending and returned as planned, pursuant to this court's order. The wife stated that she would continue to abide by all court orders in the future.

The court found the wife's testimony to be sincere, candid, and truthful. The wife's testimony was further corroborated by the testimony of the child and other admitted evidence.

Husband testimony

The husband testified next. He described meeting the wife in Saudi Arabia while he was working with the U.S. military and later as a contract employee for Saudi Arabia. The husband worked as a helicopter instructor pilot during the years he lived in Saudi Arabia. He converted to the Muslim faith before meeting the wife.

The parties jointly decided to leave Saudi Arabia and relocate to the U.S.A. After the parties married, they moved into a home owned by the husband in Coffee County, Alabama. Their child was born during the first year of marriage, and the parties have maintained the same residence. He stated the wife was a good and loving mother to their child.

The husband testified that he did not not want a divorce and believed the parties' marital difficulties could be reconciled. But he acknowledged that further attempts to reconcile the marriage would be futile. The evidence showed the parties have not been intimate in over 10 years and they sleep in separate rooms.

The husband suffered a heart attack in the last year. He was unable to maintain his FAA flight physical and was forced to resign from his job. He had considered returning to work in Saudi Arabia before the heart attack. He now earns approximately $8,000 per month income from military retirement and social security.

He testified the marital home had a tax value of $366,000 but was encumbered by a mortgage debt of $202,000. The husband estimated the house needed $60,000 in repairs.

The husband was opposed to the wife relocating the child to Saudi Arabia. He referenced several factors as a basis for his opposition. He expressed fear the wife would

refuse to return with the child and he would be unable to seek relief in the Saudi Arabian court system. Saudi Arabia is not a member of the Hague Convention and is not obligated to honor court orders from the U.S.A. Next, he referenced a recent U.S. Department of State travel advisory warning. The husband testified the travel advisory was issued because of the Israeli war. Finally, he discussed his belief that the King of Saudi Arabia did not like him. He believed he could not obtain a travel visa.

During cross examination, the husband's testimony was sometimes evasive, non-responsive and argumentative. At times, the court had to give verbal instructions to answer direct questions. He denied being verbally abusive or manipulative. He denied accessing internet pornography. He denied telling the child the mother would kidnap him. He denied threatening to adopt the child to his adult children. He denied drug use. He denied efforts to have the wife's U.S.A. citizenship rescinded.

The court admitted an audio recording into evidence. The recording depicted the husband reading court filings and court orders aloud and in the presence of the child and wife.

## Analysis

The evidence demonstrated the marriage is irretrievably broken. The parties should be granted a divorce. The testimony from all the witnesses established the wife has been the primary caregiver to the child and should be awarded physical custody of the child. The wife has significantly contributed to the marriage and should be awarded a portion of the equity in the marital home. The court determines the total equity in the marital home is $104,000. $366,000 (tax value) - $202,000 (mortgage) = $164,000 - $60,000 (home repairs) = $104,000. The wife should receive 50% or $52,000.

The primary issue in this matter is whether the child should be permitted to relocate with the mother to Riyadh Saudi Arabia. The Alabama Parent Child Relationship Protection Act provides that, "[i]n determining whether a proposed or actual change of principal residence of a minor child should cause a change in custody of that child, a court may take into account all factors affecting the child." Ala. Code 1975, § 30-3-169.3(a). The APCRPA enumerates 17 specific nonexclusive factors to be considered as to the question of modification of custody. The following are the factors with the court's findings:

"(1) The nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate with the child and with the non-relocating person, siblings, and other significant persons or institutions in the child's life."

The evidence demonstrated the child has a close bond with the mother (relocating parent). The husband testified the minor child and the mother sleep in the same room and have a close bond. The wife is a stay-at-home mother and all of her attention is devoted to the child. The husband described the wife as a great mother to the child. During each summer visit to Saudi Arabia, the mother has traveled with the child to visit her family. The husband has never traveled with the mother and child to Saudi Arabia. The husband (non-relocating parent) has lived in the same home as the child since the child's birth. But the evidence showed the activities between the father and the child were limited. The child described his relationship with the father as

positive. But the child complained about the stress he felt during this litigation. The testimony and evidence revealed the father frequently discussed the case in the child's presence and used scare tactics to manipulate the child. The father and child occasionally play video games together, but the father frequently sleeps during the day when the child is active in the house. The child expressed love for both parents, but his testimony established that he does not want to live apart from his mother.

Both parents are followers of the Muslim faith, or Islam. This court received no evidence regarding how often the child conducts his five daily Islamic prayers required of its followers. But this court is generally aware that most elementary school children in the Enterprise City School System do not engage in daily Islamic prayers. Relocating the child to Saudi Arabia would have a positive impact on the child's ability to practice his Islamic Faith. The court believes the child would likely have a feeling that he "fit in" better in Saudi Arabia.

"(2) The age, developmental stage, needs of the child, and the likely impact the change of principal residence of a child will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child."

The child is 10 years old. He has lived in the same home with both parties since birth and attended the same school. Any change in these circumstances will have a significant impact on the child. But the testimony and evidence from all witnesses revealed the house is in very poor condition. The wife and the child described the home's ongoing bug infestation. The kitchen cabinets were removed during a renovation project that was never completed. The husband testified the home needed approximately $60,000 in repairs. The court finds that relocating from the home will likely have a positive impact on the child.

During the child's testimony, the child never mentioned any school friends or neighborhood friends. Neither parent mentioned friends of the child. The mother testified the child was not involved in any extracurricular activities. The child's recreational time was centered around video games. The child attends Hillcrest Elementary School. This court is aware that all children in the Enterprise City School System are required to transfer to a junior high school after completing the 6th grade. The child will leave his current school within two years, regardless of the decision on relocation. The mother testified that she intended to enroll the child into an international school in Saudi Arabia that teaches in the English language and follows a school calendar like schools in Coffee County, Alabama. The mother determined this would benefit the child and the father. The father could plan visits with the child during the summers and other holidays typically celebrated in the U.S.A.

As previously stated herein, the child's emotional development and spiritual needs will be better met in Saudi Arabia due to the family's Muslim faith. The child will have a better opportunity to practice his faith, socialize with like minded children, and seek guidance from like-minded religious leaders.

"(3) The increase in travel time for the child created by the change in principal residence of the child or a person entitled to custody of or visitation with the child."

The relocation will substantially increase the travel time for the child to visit with the father. This court does not underestimate the challenges faced with visitation. All divorces result in parents being separated from their children for some duration of time. The evidence showed the mother and child have traveled several times to Saudi Arabia for summer visits with her family. Because the wife is unemployed, the court assumes the husband paid for the round-trip airfare for each trip. Based on the evidence, the court inferred that obtaining a round-trip airline ticket to Saudi Arabia was not an undue financial hardship for the father. The court is also authorized to adjust child support obligations to account for travel expenses.

The circumstances justify a visitation schedule that will allow the father to have extended summer and holiday visits. The extended visitations will allow the father to make up for lost time and potentially lead to more quality time with the child.

The evidence showed the father and child sometimes play video games together. Modern technology will allow the father and child to continue to play video games together and communicate in real time via the internet.

"(4) The availability and cost of alternate means of communication between the child and the non-relocating party."

The evidence demonstrated the child maintained telephonic contact with the father during his visits to Saudi Arabia. The court inferred that continued telephonic contact will be possible if the child relocates to Saudi Arabia. Further, the court may schedule regular and frequent times for telephone calls and video chat. The time difference between Saudi Arabia and Alabama is 9 hours. The evidence showed the father is accustomed to sleeping during daylight hours and being awake during the night. The time difference could be beneficial in maintaining contact between the father and child, it could also increase the opportunities the father interacts with the child due to the father's sleep cycle.

"(5) The feasibility of preserving the relationship between the non-relocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties."

The evidence showed the father is on a fixed income. During the litigation, the father was ordered to maintain a separate residence. The husband/father also maintained the status quo as to all expenses associated with the marital home. Based on the testimony and evidence, the court finds the father has the financial resources to purchase airline tickets for child visitation.

"(6) The preference of the child, taking into consideration the age and maturity of the child."

The child provided testimony. The court found the child to be mature for his age and fully aware of the divorce proceedings and the desire of each parent regarding relocation. The child stated that he wanted to live with his mother. The child also testified that he felt nervous and stuck in the middle of his parents' divorce. He expressed having fun socializing with child cousins on previous visits to Saudi Arabia. The child also stated that he did not want to hurt his father's feelings.

The guardian ad litem told the court that she believed the child should live with the mother in Saudi Arabia.

"(7) The degree to which a change or proposed change of the principal residence of the child will result in uprooting the child as compared to the degree to which a modification of the custody of the child will result in uprooting the child."

The wife/mother testified that she had no immediate family in Alabama. The husband/father has two adult children, but the family rarely interacts with them. The evidence revealed the child has no friends, school classmates, or other individuals that he regularly interacts with in Alabama other than his parents.

The testimony demonstrated the child has many family members and child cousins in Saudi Arabia. Photographs depict the child smiling with his cousins during summer visits in Saudi Arabia. She intends to live with her family in the same two-story apartment that she and the child have stayed during previous trips. She explained that it is common for Saudi Arabian families to live with extended family.

The evidence established the child has deeper roots in Saudi Arabia than in Alabama. The child has more family members and playmates in Saudi Arabia than in Alabama. His Islamic faith is more common in Saudi Arabia than in Alabama. The opportunity to practice and strengthen his faith is greater in Saudi Arabia than in Alabama.

"(8) The extent to which custody and visitation rights have been allowed and exercised."

During the litigation of this matter, the father has maintained a separate residence pursuant to court order. The father has visited with the child in the marital home. The father testified that he was dissatisfied with the amount and frequency of father/child visits, but no evidence was presented showing the mother had interfered with the visits. The evidence showed the wife/mother has complied with all court orders including returning with the child from Saudi Arabia after summer visits.

"(9) Whether there is an established pattern of conduct of the person seeking to change the principal residence of a child, either to promote or thwart the relationship of the child and the non-relocating person."

The evidence established the wife/mother has a pattern of promoting the relationship between the father and child. She has allowed the father to visit with the child, she has allowed the father to speak with the child over the telephone during visits to Saudi Arabia, and she has returned to the marital home after summer visits to Saudi Arabia during this litigation.

"(10) Whether the person seeking to change the principal residence of a child, once out of the jurisdiction, is likely to comply with any new visitation arrangement and the disposition of that person to foster a joint parenting arrangement with the non-

relocating party."

The evidence demonstrated the mother has returned with the child after each summer visit to Saudi Arabia. Most notably, the mother and the child traveled to Saudi Arabia and returned while this contentious litigation was pending. The father's concerns about the child being relocated out of the jurisdiction are valid. But the evidence supported the mother's sworn testimony that she would continue to foster a joint parenting arrangement by allowing the child to visit with the father in the U.S.A.

"(11) Whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the change of principal residence of the child and the child, including, but not limited to, financial or emotional benefit or educational opportunities."

The child's quality of life is lacking in Coffee County, Alabama. The court believes the child struggles to fit in. The child is not involved in any school or community activities. The child has no close friendships or family relationships in Alabama. The child has little to no opportunities to practice his Islamic faith in Alabama and likely feels different from the average child in the community.

The child's quality of life would be enhanced greatly by relocating to Saudi Arabia where he will routinely see many family members, attend school with cousins, and practice his faith in a Muslim society. The court believes his quality of life will be greatly enhanced.

"(12) Whether or not a support system is available in the area of the proposed new residence of the child, especially in the event of an emergency or disability to the person having custody of the child."

The evidence demonstrated that through family, friends, and religious leaders, the child has a much larger support system in Saudi Arabia than in Alabama. The child and mother plan to live with other family members in Riyadh Saudi Arabia. The child will attend the same school as his cousins. Testimony and evidence showed the child has multiple aunts, uncles, and cousins in the area where the mother plans to relocate.

The child has very few family members in Alabama. The father has adult children in the area, but testimony revealed the child has very minimal contact them. The mother has no relatives in Alabama.

"(13) Whether or not the proposed new residence of a child is to a foreign country whose public policy does not normally enforce the visitation rights of non-custodial parents, which does not have an adequately functioning legal system, or which otherwise presents a substantial risk of specific and serious harm to the child."

Saudi Arabia is not a member of the Hague Convention and is not required to honor U.S. court orders. The court believes this factor alone creates a rebuttable presumption that relocation to Saudi Arabia is not in the best interest of the child.

The evidence rebutted the presumption and tended to show the factors set forth in Ala. Code § 30-3-169.3 weigh in favor of relocation. In addition to the factors

previously discussed herein, the mother testified that she intended to promote a reasonable child/father visitation schedule by enrolling the child into an international school that followed a holiday calendar used by schools in the U.S.A. The mother stated she would encourage the father to visit with the child during the summers and extended holiday breaks from school.

The child is a natural born U.S. citizen. The mother has dual citizenship with Saudi Arabia and the U.S.A. She testified that she would comply with all court orders. The court found the mother's testimony to be credible, trustworthy, and corroborated by other evidence. The evidence showed the mother has returned with the child from previous summer visits to Saudi Arabia, including the 2025 summer visit.

The father testified that he was concerned with the child's safety if permitted to relocate. The father referenced a travel advisory warning issued by the U.S. Department of State for Saudi Arabia. But while the travel advisory warning was active, the father gave permission for the mother and child to visit Saudi Arabia in a joint motion dated June 2, 2025. The father later testified that he understood the travel advisory warning was issued in response to conflict in Israel, which has now ended.

Testimony revealed the father had recently considered relocating to Saudi Arabia. The father worked in Saudi Arabia for many years and is familiar with the country. He decided not to return after health problems cause him to lose his job. The father also expressed concern the new Saudi King might not like him because the father worked in the previous King's administration as a helicopter pilot.

Upon completing her investigation and hearing all the evidence, the guardian ad litem recommended the mother and child be permitted to relocate. The court finds that while the legal system in Saudi Arabia does not normally enforce U.S. court ordered visitation, the evidence demonstrated the mother has always promoted the father/child relationship and will comply with all court orders.

"(14) The stability of the family unit of the persons entitled to custody of and visitation with a child."

The mother testified that many members of her family live together in a single residence. She explained that multi-generational family homes are common in Saudi culture. Photographs depicted the child enjoying family events in Saudi Arabia. The court finds the family unit in Saudi Arabia promotes stability.

There was very little testimony or evidence presented that showed a stable family unit for the child in Alabama. The mother was unaware the father had several adult children when they first married. The child's half siblings have had very limited interaction with the child. The child spends most of his time at home with his mother. The evidence described a lonely life that did not promote family stability. Relocating to Saudi Arabia would be in the child's best interest for family unit stability.

"(15) The reasons of each person for seeking or opposing a change of principal residence of a child."

The mother seeks to relocate to be near her family, seek employment opportunities, and to raise the child in Saudi Arabia as a Muslim. The evidence

demonstrated that relocation would meet the mother's objectives for the child.

The father opposed the relocation because he would not see the child as often. The evidence demonstrated the father does not take full advantage of current visitation opportunities. Due to the father's medical issues and sleep patterns, he is not awake when the child is active.

Relocation to Saudi Arabia could promote a stronger father/son bond. The time zone difference would allow more video chat/gaming opportunities between the father and child. Extended summer visits would allow more consistent time for the father and child to bond. The father is a Muslim and is raising the child in the same faith. Saudi Arabia would provide better opportunities for the child to practice his faith.

"(16) Evidence relating to a history of domestic violence or child abuse."

There was no history of domestic violence charges or allegations of child abuse. The court did hear testimony regarding the father's alleged verbal abuse and inappropriate discussions with the child about sexual topics and the female anatomy. An audio recording depicted the father reading court filings aloud and discussing the litigation in the child's presence.

"(17) Any other factor that in the opinion of the court is material to the general issue or otherwise provided by law."

The court observed the demeanor or the child during his testimony. The court also listened and watched each parent testify. The court found the child's home life was lonely and filled with unhappiness. Several factors led to the court's finding. The family is not engaged in the community, social activities, or religious services. The child does not have a full life with friends, family, extracurricular activities, and religious youth groups. The child has not established roots in Alabama other than living in a house with his parents. The child's family roots, religious roots, and social roots are in Saudi Arabia.

Upon consideration of the filings, facts, evidence, and arguments of counsel, it is therefore,

    ORDERED, ADJUDGED, AND DECREED:

1. Dissolution of Marriage. Alduraibi Wasmiah is forever divorced from John Raymond Bower because of incompatibility and irretrievable breakdown of the marriage.

2. Remarriage. Neither of the parties shall again marry, except to each other, for a period of sixty (60) days after the date of this Judgment of Divorce. Should an appeal be taken within forty-two (42) days, then neither party shall again remarry, except to each other, during the pendency of such appeal.

3. Child Custody. The parties shall share joint legal custody with the mother having sole physical custody.

4. Child Support. The father shall pay the mother child support in the amount of $1,300.00 per month. The amount is less than the Alabama Child

Support Guidelines to offset the child's travel costs incurred by the father. The court reduced the annual child support by $2,775.00 (approximate cost of a round-trip ticket from Riyadh, Saudi Arabia to Dothan, AL).

5.   Visitation. The father shall be afforded liberal visitation to include all times that the parties mutually agree upon. The father is awarded visitation according to the following schedule:

a.   Every other weekend beginning Friday at 6:00 p.m. until Sunday at 6:00 p.m. This visitation time shall be exercised within sixty (60) miles of the child's residence.

b.   Winter Holiday in odd numbered years beginning the day after the child is released from school until two days before he returns to school. The child may travel to the father's residence via commercial airliner at father's expense. If school holiday is less than 10 days, the visitation shall be exercised within (60) miles of the child's residence.

c.   Father's Day weekend, regardless of when it shall fall, beginning at 5:00 p.m. on the day school dismisses and ending at 5:00 p.m. on Father's Day. This visitation time shall be exercised within sixty (60) miles of the child's residence.

d.   Spring Break in even numbered years beginning the day after the child is released from school until two days before he returns to school. The child may travel to the father's residence via commercial airliner at father's expense. If school holiday is less than 10 days, the visitation shall be exercised within (60) miles of the child's residence.

e.   Summer Visitation, six (6) full weeks during the scheduled summer break. The parties shall agree on the timing and conditions. If the parties fail to agree, the child shall travel to the U.S.A. via commercial airlines on June 1 and return July 12 at father's expense.

f.   At such other times as agreed upon between the parties.

g.   The mother shall provide the father with the minor child's schedules regarding any school activities, athletic events, extracurricular activities, and religious milestone services.

h.   Each party shall be allowed reasonable telephone visitation while the minor child is with the other party. The child shall be available for video chat/telephone calls with the father for no less than fifteen (15) minutes every Sunday and every Thursday of each week at 7:00 P.M. local time in the child's time zone.

A. RELOCATION ACT: Alabama law requires each party in this action who has either custody of or the right of visitation with a child to notify the other party who has custody of or the right of visitation with a child of any change in his or her address or telephone number, or both, and of any change or proposed changed of principal residence and telephone numbers of a child. This is a continuing duty and remains in effect as to each child subject to the custody or visitation provisions of this decree until such child reaches the age of majority or becomes emancipated and for so long as either parent is entitled to custody or visitation with a child covered by this order. If there is to be a change of principal residence by either parent or by a child subject to the

custody or visitation provisions of this order, that parent must provide the following information to the other person having custody or visitation rights under this decree as follows:

    1.    The intended new residence, including the specific street address, if known;
    2.    The mailing address, if not the same as the street address;
    3.    The telephone number or numbers of such residence, if known;
    4.    If applicable, the name, address, and telephone number of the school to be attended by the child, if known;
    5.    The date of the intended change of the principal residence of a child;
    6.    A statement of the specific reasons for the proposed change of the principal residence of a child, if applicable; and
    7.    A proposal for a revised schedule of custody or visitation with a child, if any.
    8.    Unless the parent is a member of the Armed Forces of the United States of America and being transferred or relocated pursuant to a non-voluntary order of the government, a warning to the non-relocating parent that an objection to the relocation must be made within 30 days of the receipt of the notice of the relocation will be permitted.

The relocating parent must give notice by certified mail of the proposed change of principal resident on or before the 45th day before a proposed change of principal residence. If the relocating parent does not know and cannot reasonably become aware of such information in sufficient time to provide a 45 day notice, he/she must give such notice by certified mail no later than the 10th day after the date that he/she obtains such information.

The failure to notify other parties entitled to notice of intent to change the principal residence of a child may be taken into account in a modification of the custody of or visitation with a child.

If the non-relocating party does not commence an action seeking a temporary or permanent order to prevent the change of principal residence of a child within 30 days after receipt of notice of the intent to change the principal residence of the child, the change of principal residence is authorized.

    6.    Real Property. The husband is awarded the marital home located at 136 Laurel Breeze, Enterprise, AL 36330. The wife is awarded $52,000 equity in the martial home.
    7.    Vehicles. The husband is awarded all vehicles in his possession. The wife is awarded her Mercedes Benz car. Each party shall assume all indebtedness and costs associated with ownership of their vehicles.
    8.    Personal Property. The wife shall be awarded her personal property in her

    possession. The husband is awarded all other personal items in his possession, personal property in the marital home, and all home furnishings.

9. Debts of the Parties. The husband shall be solely liable for all debts held in his name and shall hold the wife harmless from payment of the same. The wife shall be solely liable for all debts held in her name and shall hold the husband harmless from payment of the same.
10. No Disparagement Clause. Neither party shall disparage, harass, or malign the other party nor authorize a third party to do the same on their behalf.
11. Costs. The court costs in this matter are hereby taxed as paid.
12. Other Claims. All other claims before the court are denied.
13. This is a final order.

DONE this 19th day of November, 2025.

                                      /s/ HENRY T. REAGAN II
                                      CIRCUIT JUDGE